**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **JOHNNY GONZALES, Individually and** | § | |
| **on behalf of all others similarly situated** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION 2:15-cv-65** |
| | § | |
| **PIPE PROS, LLC** | § | |
| *Defendant.* | § | |
| | § | |

**DEFENDANT PIPE PROS, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR CONDITIONAL CERTIFICATION**

Defendant Pipe Pros, LLC ("Pipe Pros") files this Response in Opposition to Plaintiff's

Motion for Conditional Certification ("Plaintiff's Motion") and would respectfully show the

Honorable Court as follows:

## I.      SUMMARY OF THE ARGUMENT

Plaintiff's Motion seeks class certification of a group of Pipe Pros employees,

"Operators," who are unsuitable for collective treatment under the Fair Labor Standards Act (the

"FLSA").[1]  In addition to failing to meet any conceivable evidentiary burden for certification,

Plaintiff's request is clearly trumped by the overwhelming weight of the evidence.  **Specifically,**

**Plaintiff's Motion fails because:**

- **Plaintiff bears the burden of establishing that he is similarly situated to the putative class members;**

- **Plaintiff fails to provide a legally sufficient definition of the putative class;**

- **Plaintiff has failed to present any competent evidence that he is similarly situated to the class of individuals he wishes to represent or that Pipe Pros utilized a single classification policy for all putative class members;**

---

[1] *See* Dkt. No. 1, at ¶ 1.

- **The evidence presented by the parties clearly establishes that numerous variables affect the daily conditions and duties of the putative class members, therefore requiring a highly individualized inquiry; and**

- **Finally, Pipe Pros has classified the putative class members as exempt from overtime under four separate and distinct exemptions: 1) the FLSA's executive exemption; 2) the Motor Carrier Act exemption; 3) the FLSA's outside sales exemption; and 4) the FLSA's administrative exemption, which further renders the class unmanageable and inappropriate for collective treatment.**

## II.   <u>INTRODUCTION</u>

On January 29, 2015, Plaintiff filed his Original Complaint seeking formation of a collective action under the FLSA.  *See* Plaintiff's Original Complaint, Dkt. No. 1.  On May 7, 2015, Plaintiff requested that this Court grant conditional certification and issue notice to the putative class members. *See* Plaintiff's Motion, Dkt. No. 10. Specifically, Plaintiff requests this Court certify a class comprised of "[a]ll operators who worked for Pipe Pros from January 29, 2012 to the present, and were paid a salary plus a job bonus but did not receive overtime[.]" *See Id.* at p. 2.  Plaintiff's description fails to restrict the putative class in any meaningful manner or to a remotely similar group of Pipe Pros' employees.  Should the class be conditionally certified, this Court will be left with an unmanageable hodgepodge of individuals bearing little resemblance to each other, much less the named Plaintiff.

This case presents unique facts making class certification improper. The key difference in this from the norm is that Plaintiff's failure to properly identify a distinct class of employees would result in a class makeup of individuals whose jobs differ significantly with respect to duties, geographical location, and work conditions.   These discrepancies led Pipe Pros to implement varying classifications and classification decisions.   For example, **while many putative class members are classified as exempt employees under the FLSA's**

-2-

**administrative exemption, some individuals are classified as exempt under the Motor Carrier Act ("MCA")'s overtime exemption and others are classified as exempt under the FLSA's executive or outside sales exemptions.**  Although it is true that a large segment of Pipe Pros employees did not receive overtime, Plaintiff has failed to identify a discernible group of employees.  Consequently, Plaintiff cannot establish that he is similarly situated to the putative class members.  Because there is no similar plan, policy or practice linking the employment of the Operators together into a single, homogenous group, Plaintiff cannot meet his burden at this stage.  Accordingly, this case is unsuitable for collective treatment.

Lastly, Plaintiff fails to present this Court with competent evidence to support his Motion.  An employee seeking approval of a collective FLSA action bears the burden of establishing that he is similarly situated with the class he wishes to represent.  **Though seeking a conditional class made up of "Operators," Plaintiff has failed to manufacture even a cursory attempt to establish similarity between any employees beyond those designated as "Tong Operators and Tripper Operators."**  *See generally* Plaintiff's Motion; Ex. A to Plaintiff's Motion.  Moreover, Plaintiff's similarity evidence is limited to a single, conclusory statement that he believes the pay practices for Tong Operators and Tripper Operators are the same. However, employees are not similarly situated simply because they claim overtime violations by the same employer. Rather, Plaintiff must provide evidence establishing a single decision, policy or plan violating the provisions of the FLSA. Plaintiff's Motion fails in this respect even under the most lenient of standards.

For these reasons, and as set forth more fully herein, Plaintiff's Motion should be denied, and Plaintiff should, instead, pursue his purely personal claim individually.

MHDocs 6082503_1 15530.1

### III.   EVIDENCE

1.   **Exhibit A –** Deposition of Jonny Gonzales

2.   **Exhibit B –** Affidavit of Gary Edwards

3.   **Exhibit C –** Declarations of Current and Past Employees

4.   **Exhibit D –** Plaintiff's text messages to putative class members

### IV.   FACTUAL BACKGROUND

Plaintiff performed work for Pipe Pros as an exempt, salaried employee in the position of Tong Operator and Tripper Operator from September 2013 until he was terminated in January 2014.  *See* Ex. A to Plaintiff's Motion at ¶ 3; *see also* Deposition of Jonny Gonzales "Gonzalez Deposition," at p. 88:22-90:18, attached to this Motion as Exhibit "A-1."   Plaintiff was terminated for failing to adhere to Pipe Pros' on-call policy.  *See* Exhibit "A-2", Gonzalez Deposition at pp. 28:14-30:16.  Plaintiff alleges his duties consisted of:

> As a Tong Operator,  my job duties were to check tongs, tong dies, hoses and power unit upon  arrival at the job site, identify safety hazards, rig up tongs, operate  tongs, rig down tongs, check tools and leave location.
>
> As a Tripper  Operator,  my job duties were to check tripper upon arrival [*sic*] the  job site, identify safety hazards, rig up tripper, operate tripper, rig down  tripper, check tripper and leave location.

*See* Ex. A to Plaintiff's Motion at ¶¶ 4, 5.  Plaintiff alleges he worked fourteen (14) to sixteen (16) hour shifts, seven (7) days per week, without overtime pay.  *Id*.  Plaintiff further alleges – through conclusory testimony – that "[t]he pay practices described above are consistent for all Tong and Tripper Operators employed by Pipe Pros during the time period that I worked at Pipe Pros regardless of location[]" and "all of the pay practices that I have described above, are still in effect at Pipe Pros at the present time." *Id*. at ¶¶ 11, 19.

Although Plaintiff only worked as a Tong Operator and a Tripper Operator, Plaintiff's Motion seeks representation of a much broader class of "Operators." *See* Plaintiff's Motion, Dkt.

No. 10 at p. 2; *see* Exhibit "A-3", Gonzales Deposition, p. 63:2-23.  Specifically, Plaintiff has requested a class of "[a]ll operators who worked for Pipe Pros from January 29, 2012 to the present, and were paid a salary plus a job bonus but did not receive overtime[.]" *Id.*

> Q  (Defendant's Counsel) Okay.  So I'm just trying to make sure we're talking about the same thing.  May I assume, from your answer, Mr. Gonzales, that if you felt comfortable representing a bigger class, a broader class, other groups of people, that you would have told me that, right?
>
> A    (Plaintiff) Well, I would assume anybody that's getting hourly -- a salary, plus hourly, and not getting overtime, I mean, they would also have to be part of it, too, because if they're getting paid unfairly, they're not getting their overtime wages, they should be involved, too, and they should get their wages.

*See* Exhibit "A-4," Gonzalez Deposition at p. 66:4-15.  However, Pipe Pros does not possess a class or division of employees with the title "Operator."  *See* Affidavit of Gary Edwards at ¶ 2, attached to this Motion as Exhibit "B."  As such, Plaintiff's only cognizable limitations to the putative class are: 1) Pipe Pros' employees from January 29, 2012 to the present; 2) who were paid a salary plus a job bonus; and 3) did not receive overtime.  *See* Plaintiff's Motion, Dkt. No. 10 at p. 2; *see also* Exhibit "A-5," Gonzales Deposition, pp. 63:8-67:4.  Plaintiff's putative class, thus, covers a large spectrum of employees including managers/supervisors, salesmen, and equipment delivery personnel. *See* Exhibit "B," Edwards Affidavit at ¶ 2; *see also* Declarations of Current and Past Employees, attached to this Response as Exhibit "C."[2]

The majority of the putative class's job duties change daily because of numerous variables such as the demands of their field supervisors, the company man,[3] the client, the specific worksite, the work being performed on the worksite that day, and day-to-day work conditions like weather.  *See* Exhibit "B," Edwards Affidavit at ¶ 3; *see also* Exhibit "C."

---

[2] Pipe Pros attaches thirty-four (34) putative class member affidavits for the Courts review.

[3] The company man is employed by the oil and gas companies, which is Pipe Pros' client, and is generally the lead person on site.

Depending on these variables, a member of the putative class may perform the following exempt activities:

- Sales operations;

- Companywide, division or team management and supervision;

- Pulling equipment across state lines with truck/trailer combinations weighing over 10,001 lbs.; and

- Performing administrative duties.

*Id*. Additionally, Some of the primary duties of the putative class do not involve manual labor but rather managerial and administrative services for Pipe Pros and its oil and gas customers. *Id*.

## V.     ARGUMENT AND CITATION TO AUTHORITY

### A.     Standard for Conditional Certification of a Collective Action.

The FLSA allows a person to maintain an action on "behalf of himself . . . and other employees *similarly situated*." 29 U.S.C. § 216(b) (emphasis added). "[F]or an opt-in class to be created under the FLSA, an employee must show he and the employees on whose behalf he is suing are 'similarly situated.'" *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1215 (5th Cir. 1995), *abrogated on other grounds by   Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 (2003). **The plaintiffs seeking class certification bear the burden of establishing that they are "similarly situated."** *Id.*; *see also Cruz v. Lawson Software, Inc.,* 764 F. Supp. 2d 1050, 1057 (D. Minn. 2011).

The FLSA does not define "similarly situated," and the Fifth Circuit has not expressly adopted a specific standard to clarify the meaning of the term. However, the Fifth Circuit has recognized the two-stage inquiry as the established method to determine whether collective treatment under Section 216(b) is appropriate. *Mooney,* 54 F. 3d at 1212. This two-stage inquiry has been adopted uniformly by the district courts in the Fifth Circuit. *See, e.g.*, *Reyes v. Texas*

-6-

*EZPawn, Inc.*, No. V-03-128, 2007 WL 101808, at *2 (S.D. Tex. Jan. 8, 2007); *Recinos v. Express Forestry, Inc.*, 233 F.R.D. 472, 477 (E.D. La. 2006); *Hays v. Lavoy Thomas, Inc.*, No. 5:05CV227, 2006 WL 1004991, at *3-4 (E.D. Tex. Apr. 18, 2006); *Williams v. Bally's Louisiana, Inc.*, No. 05-5020, 2006 WL 1235904, at *2 (E.D. La. May 5, 2006); *Johnson v. TGF Precision Haircutters, Inc.*, No. H-03-3641, 2005 WL 1994286, at *1 (S.D. Tex. Aug. 17, 2005); *Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004); *Donohue v. Francis Servs. Inc.*, No. 04-170, 2004 WL 1161366, at *1 (E.D. La. May 24, 2004); *Barnett v.Countrywide Credit Indus., Inc.*, No. CIV.A.3:01-CV-1182-M, 2002 WL 1023161, at *1 (N.D. Tex. May 21, 2002).

**B.      Plaintiff's Burden of Proof is not Slight.**

The FLSA does not require conditional certification or notice to the potential collective action members.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("district courts have *discretion, in appropriate cases*, to implement 29 U.S.C. § 216(b) . . . actions by facilitating notice to potential plaintiffs) (emphasis added); *Valcho v. Dallas County Hosp. Dist.*, 574 F. Supp. 2d 618, 621 (N.D. Tex. 2008) ("notice is by no means mandatory").   Conditional certification of a collective action is left solely to the court's discretion, and "**is by no means mandatory**, the relevant inquiry in each particular case is whether it would be appropriate to exercise such discretion"  *Harris v. Fee Transp. Servs., Inc.*, No. 3:05-cv-0077-P, 2006 WL 1994586, at *2 (N.D. Tex. May 15, 2006) (emphasis added); *Hall v. Burk*, No. 3:01-CV-2487, 2002 WL 413901, at *5-6 (N.D. Tex. May 11, 2002**).   The only "appropriate case" to facilitate notice is one where plaintiff shows that "other employees [are] similarly situated *and* where the judicial system would "benefit[] by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity."** *Hoffmann-La Roche Inc.*, 493 U.S. at 170 (emphasis added).

Conditional certification should be denied where plaintiffs cannot make such a showing because "employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense." *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008). **When refusing to authorize notice, several courts have noted the district court's "responsibility to avoid 'stirring up' of litigation through unwarranted solicitation" when it is apparent, as it is here, that the parties are not similarly situated and cannot adjudicate their claims on a representative basis.** *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (*quoting Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991)) (emphasis added); *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 401 (E.D. Tex. 1999); *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995). As shown herein, this is not an appropriate case for certification. Moreover, as stated by Judge Lee Rosenthal of the Southern District of Texas, "an FLSA plaintiff is not entitled to conditional certification simply to seek out others who might wish to join the action." *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010) (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007).

**C.      Plaintiff's Motion for Conditional Certification is Subject to a More Stringent Review by the Court Because Plaintiff Had the Opportunity to Conduct Discovery.**

As stated above, Courts in this jurisdiction typically follow a two-stage certification process set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987), which consists of a "notice" stage followed by a "decertification" stage. *Wilson*, 2011 WL 3020876, at *2-3. While courts describe the first stage as "lenient," **plaintiffs still bear the burden of proving that the class is similarly situated.** *Morales v. Thang Hung Corp.*, No. 4:08-2795, 2009 WL 2524601, *2 (S.D. Tex. Aug. 14, 2009). "Under *Lusardi*, it is not enough for Plaintiffs to show that **some members** of the proposed class may be similarly situated to them. **Rather, Plaintiffs**

-8-

**must offer some evidence that the proposed class, as a whole, is made up of individuals that are similarly situated to them.**" *Wilson*, 2011 WL 3020876 at *3 (emphasis added).

This first stage most often occurs prior to discovery and is "usually based only on the pleadings and any affidavits which have been submitted. . . ." *See, e.g.*, *Mooney*, 54 F.3d at 1213-14.   At the second stage, the court makes a conclusive, factual determination on the "similarly situated" question.   *Mooney*, 54 F.3d at 1214; *see also H&R Block Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999).   Because there has been ample opportunity for discovery on the certification issue, this stage is more demanding than the first stage.   *See Mooney*, 54 F.3d at 1214.   If the court determines that the class does not consist of similarly-situated persons, it will properly deny certification and dismiss the plaintiffs' collective action claims.   *See Mooney*, 54 F.3d at 1214; *see also H & R Block*, 186 F.R.D. at 400.

**When, as here, the opportunity to conduct discovery relating to the issue of certification has already occurred, the Court may proceed directly to the more stringent stage of the *Lusardi* approach.**   *See England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 509 (M.D. La. 2005) (*citing Basco v. Wal-Mart Stores, Inc.*, No. Civ. A. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004)) (emphasis added); *Ray v. Motel 6 Operating, Ltd. P'ship*, No. 3-95-828, 1996 WL 938231, at *4 (D. Minn. March 18, 1996).   Discovery need not be completed for the Court to apply the more rigorous standard.   *See id.*; *see also Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-CV-592-FDW-DSC, 2011 WL 4351631, at *5 (W.D.N.C. Sept. 16, 2011); *see also Fee Transp. Servs., Inc.*, No. 3:05-cv-0077-P, 2006 WL 1994586, at *3 **("[W]here the parties had the <u>opportunity</u> to conduct discovery on the issue of certification, the similarly situated inquiry is more stringent**.") (emphasis added); *Basco v.*

*Wal-Mart Stores, Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709, at *9-10 (E.D. La. July 1, 2004); *Thiessen v. GE Cap. Corp.*, 996 F. Supp. 1071, 1080-81 (D. Kan. 1998).

In the present case, Pipe Pros has conducted written discovery and taken the deposition of the named Plaintiff. *See e.g.* Exhibit "A." In contrast, Plaintiff has chosen not to perform any discovery, despite having equal opportunity to do so. Despite Plaintiff's lack of diligence, the relative fact is that Plaintiff possessed the opportunity to conduct discovery. *Id.* *See Harris v. Fee Transportation Services, Inc.*, Civ. Action No. 3:05CV0077–P, 2006 WL 1994586, *5 (N.D. Tex. 2006) ("But where the parties have had the opportunity to conduct discovery on the issue of certification, the similarly situated inquiry is more stringent) (internal citation omitted); *see also Ray*, 1996 WL 938231, at *4 (applying a more stringent standard at the initial stage because "the facts before the Court are extensive [and] there is no need for discovery in order to reach a determination"); *see also Brooks v. Bellsouth Telecomm.*, Inc., 164 F.R.D. 561, 568–69 (N.D Ala. 1995) (**finding that a three month period for discovery was extensive enough to prompt the second stage of the analysis**). Because Plaintiff "had the opportunity to conduct discovery[,]" the Court should hold Plaintiff to a more stringent standard and make a factual determination based on the evidence presented by the Plaintiff and Pipe Pros as to whether the claimants are similarly situated based on the totality of the circumstances and all evidence available to the Court. *See England*, 370 F. Supp. 2d at 509.

**D.     Plaintiff Cannot Show that Pipe Pros Implemented a Single Decision, Policy or Plan that Violated the FLSA Simply by Relying on the Exempt Classification.**

At the conditional certification stage, a plaintiff "must provide the court with some evidence establishing that the defendants subjected a group of similarly situated potential class members to a 'single decision, policy or plan' violating the provisions of the FLSA." *Albanil v. Coast 2 Coast, Inc.*, No. H-08-486, 2008 WL 4937565, at *3 (S.D. Tex. Nov. 17, 2008); *Songer*

-10-

*v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008).  "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."  *Simmons v. T-Mobile USA, Inc.*, No. 06-1820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2007); *see also Aguirre v. SBC Comm''ns, Inc.*, No. 05-3198, 2006 WL 964554, at *5 (S.D. Tex. Apr. 11, 2006); *see also England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005).  To proceed as a collective action, there must be "identifiable facts or [a] legal nexus that binds the claims so that hearing the cases together **promotes judicial efficiency**."  *England*, 370 F. Supp. 2d at 509 (emphasis added).  **A plaintiff's failure or inability to establish a "single decision, policy or plan" is grounds to deny conditional certification.  *Id.***

> **Here, Plaintiff does not attempt to make even a cursory argument that all Operators were subjected to a single decision, policy, or plan.**  Instead, Plaintiff relies on the sole fact that Plaintiff and putative class members shared a job title ("Operators")[4] and were not paid overtime to distinguish the putative class:

> The fact that Pipe Pros treated all Operators as exempt regardless of where they worked, which client they were working with, or any other individualized factors demonstrates that all of the individuals are similarly situated for purposes of conditional certification.

*See* Plaintiff's Motion, at p. 11.

> Q     (Defendant's Counsel) Okay.  All right.  Now, you're talking about the fact that you want to be the class representative of all others similarly situated, right?

> A     (Plaintiff Gonzales) In the same position as me, yes.

> Q     Yes.  And, so, who, in your mind, do you think is similarly situated?

> A     Operators.

---

[4] As discussed throughout the Response, the title "Operator" is not employed my Pipe pros; thus, provides no true limitations on the class. Moreover, as detailed *infra* sharing a title is not alone grounds for similarity.

Exhibit "A-6," Gonzales Deposition, pp. 62:23-63:4. Such statements fail to meet Plaintiffs' burden. i

In *Freeman v. Wal-Mart Stores, Inc.,* the Western District of Arkansas considered whether a class of Wal-Mart employees were similarly situated for purposes of collective treatment. 256 F.Supp.2d 941, 945 (W.D. Ark. 2003). Concluding that the class was not suitable for collective treatment, the court held that employees are not similarly situated simply because they claim overtime violations by the same employer. *Id*; *see also England,* 370 F. Supp. 2d at 509; *see also Harris v. Fee Transportation Services, Inc.,* No. Civ.A.3:05CV0077–P, 2006 WL 1994586, *4 (N.D. Tex. May 15, 2006) (holding that "[s]imply alleging violations of the law by the same employer is insufficient to justify a collective action.").

**Consistent with the cited case law, Plaintiff's contention that the class was wrongfully denied overtime compensation is simply not evidence that Plaintiff is similarly situated to the putative class members or that Pipe Pros' implements a single decision, policy, or plan.** Plaintiff's limited and conclusory statement that "[t]he pay practices described above are consistent for all Tong and Tripper Operators employed by Pipe Pros during the time period that I worked at Pipe Pros regardless of location[]" can only be read to imply that: 1) only Tong and Tripper Operators possessed similar pay plans; or 2) Plaintiff has no knowledge or evidence of the pay plan for Pipe Pros employees outside of Tong and Tripper Operators. *See* Ex. A to Motion at ¶ 11. Plaintiff admits the latter:

> Q.   (Defendant's Counsel) Okay. And so who would those people be? If they're not trippers or tong operators, who else would it be?
>
> A   (Plaintiff Gonzales) I don't know the complete pay scale of Pipe Pros. I'm sure they know that. They have that information, so they could probably give you that information.
>
> **Q   No, but asking you for what you know.**

**A     And I don't you (*sic*) I don't know.  I don't have that.**

Q     So, as we sit here today, the only groups of employees at Pipe Pros would be trippers and tong operators that you're aware of?

Q     Who are getting the salary, plus hourly?

A     At this time, yes.

*See* Exhibit "A-7," Gonzales Deposition, pp. 67:5-21.  Plaintiff's inability to establish or proffer any evidence to support a single decision, policy, or plan with respect to the putative class of "Operators", in and of its self, warrants denial of conditional certification.

In addition, Plaintiff's argument ignores the realities of this case: Pipe Pros's decision to classify the putative class members as exempt was based upon factors highly personal to each individual.  Specifically, Pipe Pros took into consideration each employee's job duties as controlled by varying individual circumstances such as geographic location, clients, company men, work site, supervisors and personal ability.  *See* Exhibit "B," Edwards Affidavit at ¶ 4.  Such variances will unquestionably require this Court to conduct significant individual analyses of each claim.

In *England v. New Century Fin. Corp.*, the court denied conditional certification because of the wide disparity in employment locations, supervisors, and the resulting employment conditions:

> The Court finds that the evidence presented and outlined above further underscores the disparate factual and employment settings of the individual plaintiffs. These facts demonstrate that it would not be in the interest of judicial economy to certify the state-wide class of employees. A store located in Northern Louisiana faces different pressures and sales dynamics than a store in Southern Louisiana. Such variances would be equally possible even within the New Orleans area from store to store. Furthermore, the breadth of the type of employees and departments would also have to be placed into the equation. In addition, it is clear that even within a given store, on[e] manager in one department would react to the "policy" differently than in another department...Furthermore, [defendant's] potential defenses to any alleged FLSA overtime violations will require highly individualized evidence concerning each associate. . . **The potential opt-in plaintiffs performed different jobs at different**

-13-

> geographic locations and were subject to different managerial
> requirements which occurred at various times as a result of various
> decisions by different supervisors made on a decentralized employee-
> by-employee basis. This case should not be certified . . . .

370 F. Supp. 2d at 509 (citing *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941 (W.D. Ark. 2003)).   Moreover, the varying individualized factors in this case did not result in one classification but, instead, four separate and distinct bases for exemption from overtime.   While some employees are classified as exempt under the FLSA's executive or administrative exemption (*see generally* Exhibit "C"), other employees were classified as exempt under the Motor Carrier Act.   Still, some Pipe Pros employees such as Manuel Cadena are also exempt under the FLSA's outside sales exemption.   *See* Exhibit "C," Declaration of Manuel Cadena.

Here, the evidence before the Court establishes that the necessary, individualized inquiries into the exempt status of each putative plaintiff will eliminate any judicial economy offered by the collective process.   There is not one company decision, policy, or plan in place here.   Instead, there are individual decisions made on varying factors that lead to at least four separate classifications of exempt employees.   Thus, Plaintiffs' Motion must be denied.

**E.    Plaintiff is not Similarly Situated to the Putative Class Members.**

Plaintiff's declaration fails to provide competent evidence of similarity to the putative class of "Operators."   *See* Ex. "A" to Plaintiff's Motion.   **Rather, Plaintiff provides numerous statements pertinent only to Tong Operators and Tripper Operators.** For example, Plaintiff's declaration discusses the job duties, compensation, and hours of Tong Operators and Tripper Operators but fails to identify, much less establish, any similarities to the larger class of "Operators:"

> - As a Tong Operator,  my job duties were to check tongs, tong dies, hoses and power unit upon  arrival at the job site, identify safety hazards, rig up tongs, operate  tongs, rig down tongs, check tools and leave location.

-14-

- As a Tripper  Operator,  my job duties were to check tripper upon arrival [sic] the job site, identify safety hazards, rig up tripper, operate  tripper, rig down tripper, check tripper and leave location.

- While some Tong Operators and Tripper  Operators may have received  less than $12.00 per hour, other Tong Operators  and Tripper  Operators  were paid $15.00 and$17.00 per hour  for all hours worked on a certain  job at the rig/well site.

- All job bonuses were intended  for the same purpose-reward myself and other Tong  and Tripper Operators for our hard work, efficiency and safety in completing  a job.

- The pay practices described  above are consistent for all Tong and Tripper Operators employed by Pipe Pros during the time period that I worked at Pipe Pros regardless of location.

*See* Ex. A to the Motion at ¶¶ 4, 5, 9, and 11. As with Plaintiff's testimony regarding common pay practices, one can only assume that Plaintiff fails to address the larger putative class of "Operators" because either they are not similar or Plaintiff lacks any knowledge or evidence of similarity.   Again, Plaintiff admits the latter in his deposition testimony. *See* Exhibit "A-8," Gonzales Deposition, pp. 70:20-73:1.

1.   **Plaintiffs worked in different geographical locations resulting in varying, individualized job duties.**

The putative class of "Operators" provide services for Pipe Pros and its customers at different well sites and offices throughout Texas and the U.S.  Whereas Plaintiff worked out of the Corpus Christi office, the vast majority of Pipe Pros employees and putative class members work out of other offices, such as East Texas (Kilgore, Texas), West Texas (Midland, Texas) and Louisiana (Lafayette).  *See* Exhibit "B," Edwards Affidavit, at ¶ 5; *See* Exhibit "C." Moreover, many other putative class members perform their work in various locations such as Texas, Louisiana, Mississippi, New Mexico, Colorado, Arkansas, Alabama and Pennsylvania.  *See id.* These geographical differences are significant because they result in varying demands from the Field Supervisors, the company man, the client, specific worksites, and day-to-day work

-15-

conditions such as weather – which in turn result in varying job conditions and duties for the employees:

> Q     (Defendant's) In your experience, have the company men been different about how they go about a job and what they demand of the service companies?
>
> A    (Plaintiff) Yes.
>
> Q    Have you met company men that are difficult to work with?
>
> A   No.
>
> Q    Have you met company men that have some things that are important to them that -- and different company men where other things are more important to them?
>
> A     No.  Oh, yes, I have.  Some people – Some matter, yes. Yes.
>
> Q     So, really, I guess all that matters is, the company man, from place to place can vary as to what he or she thinks is important, right?
>
> A    Yes.
>
> Q    And as to what he or she demands of the service company, such as Pipe Pros and yourself, that come out there, right?
>
> A   Yes.

*See* Exhibit "A-9;" Gonzales Deposition at pp. 75:15-76:9.

While Plaintiff's job duties rarely consisted of delivering trailers – a role consistent with some Tong and Tripper Operators in Corpus Christi – employees located in Kilgore, for example, often pull their own trailers.  *See* Exhibit "B," Edwards Affidavit at ¶ 6; *see* Exhibit C, *e.g.* – Declaration of Gustavo Corrales  at ¶ 5 ("To and from every job, I drive a company truck with a trailer and equipment"); Declaration of Jose Abel Patino at ¶ 7 ("As a Field Supervisor, I am regularly asked to drive a company truck, with a trailer attached, to haul equipment to various jobsites."); Declaration of Fred Murphy Sangwin, Jr. ("As part of my responsibilities for Pipe Pros, I drive a truck with a trailer to and from the worksite.").

-16-

The significant differences in job duties and conditions between Plaintiff and the putative class renders Plaintiff and his claims dissimilar and inappropriate to act as class representatives. Furthermore, determining the specific duties performed by Plaintiff and each putative class member will require this Court to perform extensive individual analyses as to Plaintiff's claims and Pipe Pros's defenses.  Such facts do not lend themselves to collective treatment.  As stated by the Southern District of Texas, "[t]he Court cannot only look to [Defendant's] uniform classification of the workers.  Instead, it must determine whether the proof to demonstrate that the workers [are properly classified] can be applied to the class as a whole."  *Andel v. Patterson-UTI Drilling Co., LLC*, No. V–10–36, 280 F.R.D. 287, 289-290 (S.D. Tex. Feb. 15, 2012). Because the necessary "proof" to determine the proper classification of each "Operator" differs, and, therefore, would require an individualized, fact-intensive inquiry into each "Operator's" job duties, class certification of this matter contravenes the primary purpose behind class action lawsuits – the promotion of judicial economy.  *Id.*   Thus, this case is inappropriate for conditional certification.

> 2.   **Plaintiff and putative class members worked on various sites with varying operations.**

The putative class's job duties often differ within geographical areas, even when working for the same client, due to the type of site they are assigned to work.  *See* Exhibit "B," Edwards Affidavit ¶  7; Exhibit "C."  Pipe Pros's clients' operations include fracturing, coil tubing, flow back, drilling, and sandblasting, often with simultaneous operations occurring at the same site. *See* Exhibit "B," Edwards Affidavit ¶ 8.  Some putative class members worked on all the various sites, while others may have only worked on one or two sites. *Id.*; *See also* Exhibit "C." The differing operations inherently result in varying, individualized job conditions and duties – a fact recognized by Texas Federal courts.

-17-

In *Tolentino v. C & J Spec-Rent Services Inc.*, the Southern District of Texas, J. Janis Graham Jack, considered whether certain oil field workers were similarly situated for purposes of collective actions under the FLSA. 716 F. Supp. 2d 642, 652 (S.D. Tex. 2010). Specifically, the court compared employees performing work on coil tubing sites versus employees performing work on fracturing sites. *Id.* Holding that the employees were not similarly situated, the court found that evidence established that sites require different equipment and a different composition of work crews. *Id.*

Consistent with *Tolentino*, the varying client operations on which putative class performed work is determinative. Those putative class member that perform services for different operations, such as coil tubing versus fracturing, would not be similarly situated to each other for purposes of conditional certification, and certainly not for the more stringent decertification standard. *Id.*

### 3. Putative Class Members received varying pay.

Although Plaintiffs' Motion states Plaintiff and the Operators have or had the same pay structure while at Pipe Pros, Plaintiff offers no testimony or evidence supporting this position. *See* Ex. A to Plaintiffs' Motion, ¶ 11. In reality, the putative class member's compensation differs. *See* Exhibit "B," Edwards Affidavit ¶ 9; *See* Exhibit "C." The annual and monthly salary varies from person to person. *Id.* Also, some employees were eligible for varying hourly bonuses for certain jobs and received a per diem. *See* Exhibit "B," Edwards Affidavit ¶ ; *See* Exhibit "C." Further, the number and amount of bonuses paid to each person varies from putative class member to putative class member, requiring individual calculations of regular rate of pay that would vary from week to week for each putative class member. *See* Exhibit "B," Edwards Affidavit ¶ 9. Because the putative class members are not similarly situated with respect to their pay, Plaintiff's Motion should be denied. *Dybach v. State of Fla. Dept. of*

-18-

*Corrections,* 942 F.2d 1562, 1567-68 (11th Cir. 1991) (holding that the putative class must be similarly situated with respect to their job requirements and with regard to their pay provisions).

                4.      **Plaintiff cannot use job titles to show that he is similarly situated.**

Plaintiff's use of the "Operator" title does not establish similarity. As discussed above, the term "Operator" is not a job title employed by Pipe Pros and provides no true limitations as to the class participants. **Thus, every Pipe Pros employee receiving a salary and bonus is subject to inclusion in Plaintiff's class including salesmen, managers/supervisors, administrative personnel and equipment delivery personnel.** Without question, Plaintiff has not and cannot establish he was similarly situated with such a vast array of employees, each possessing differing job duties and responsibilities.

However, even accepting, *in arguendo*, "Operator" is a correct working title, Plaintiff is no closer to meeting his burden to establishing similarity. *Morisky v. Public Srvc. Electric & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) ("Even employees who hold the same job title do not necessarily perform the same work."). A representative plaintiff, through the pleadings and other evidence in the record, must establish that the "opt-in" employees are "similarly situated" to him in their job descriptions, job duties, and claims alleged. *Cohen v. Allied Steel Bldgs., Inc.*, 554 F.Supp.2d 1331, 1334 (S.D. Fla. 2008). Here, it is Plaintiff's and the putative class member's job duties that determine whether any are owed overtime, not their job title. Accordingly, the Court must perform a detailed analysis of the actual job duties of each putative class member. *See Cruz,* 764 F.Supp.2d at 1062; *see also Smith v. Heartland Auto. Servs. Inc.,* 404 F.Supp.2d 1144, 1151 (D. Minn. 2005). The disparate job functions of the "Operators" Plaintiff points to does not warrant certification. *See* Exhibit "C." Moreover, as dicussed previously, Plaintiff has failed to provide any basis to determine similarity for employees outside of Tong and Tripper Operators.

-19-

**F.      The Various Defenses Available to Pipe Pros are Unique and Specific to Each Plaintiff.**

Another factor to be considered by the Court is whether the employer's potential defenses pertain to the opt-in class as a whole or whether different defenses will be raised with respect to each individual plaintiff.  *See, e.g.*, *Thiessen,* 267 F.3d at 1103; *Mooney,* 54 F. 3d at 1213 (citing *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987)); *see also Morisky v. Public Serv. Elec. & Gas Co.,* 111 F. Supp.2d 493, 498 (D.N.J. 2000).  **The district court has the discretion to deny conditional certification or decertify on this basis alone where the potential defenses would make the class unmanageable.**  *Id.*  To determine whether the opt-in plaintiffs are similarly situated for purposes of the misclassification issue, the Court must consider their job duties in light of the exemption criteria set forth in the Department of Labor's regulations. *See Johnson v. Big Lots Stores, Inc*., 561 F.Supp.2d at 574; *see also Morisky v. Public Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493, 498 (D.N.J.2000) (explaining that whether plaintiffs are similarly situated must be "analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt").  **"[W]hen an employer asserts an exemption as a defense . . . the resolution of which depends on how employees spend their time at work, unless plaintiff proposes some form of common proof, such as a standard policy governing how and where employees perform their jobs, common issues of law or fact are unlikely to predominate."** *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 268 F.R.D. 604, 611 (N.D. Cal.2010) (emphasis added).

Here, there is no evidence of common proof to justify certification of the Plaintiff's claim as a collective action.

-20-

1.      **"Operators" are exempt from overtime based on four separate and distinct classification schemes.**

As discussed above, Pipe Pros has designated putative class members as exempt under the FLSA's executive exemption, the Motor Carrier Act exemption, the FLSA's outside sales exemption and the FLSA's administrative exemption.  *See* Exhibit "B," Edwards Affidavit ¶ 10. An analysis of the exemption classification issue is highly fact-intensive, given the multiplicity of factors that the Department of Labor's regulations require a court to consider in determining whether an employee is properly classified in light of his or her actual job duties.  *See Johnson v. Big Lots Stores, Inc*., 561 F.Supp.2d 567, 574 (E.D. La. 2008) (decertifying misclassification case).

The FLSA exemption analyses are based on each person's actual, "day-to-day activities and responsibilities."  *Cruz,* 764 F.Supp.2d at 1062, (citing *Fife v. Harmon,* 171 F.3d 1173, 1175 (8th Cir.1999); 29 C.F.R. § 541.700).  Therefore, the question of whether an exemption applies is "an intensely fact bound and case specific question."  *Id.* (quoting *Rutlin v. Prime Succession, Inc.,* 220 F.3d 737, 740 (6th Cir. 2000)).  The Court or jury will have to decide whether each Plaintiff engages in exempt work as his or her "primary duty" in light of "all the facts in a particular case."  29 C.F.R. § 541.700(a).  The Court or jury will have to examine the relative importance of exempt duties, the amount of time spent performing exempt work, and the level at which the employee is subject to direct supervision.  *Id.*

Specific to the executive exemption, Plaintiff has testified that he intends to represent Pipe Pros's supervisors and managers who were classified as exempt, salaried employees:

> Q    Let me ask you this way:  The way you're paid or were paid, you got a salary, plus the hourly, plus the quarterly bonus, right?
>
> A    Yeah.

> Q    Okay.  And if the field supervisors were paid the same way that I just described, as you were paid, in your mind, should they be in your class or not?

> Q    Now, let me rephrase that.  If these field supervisors are paid the same way as you are, are you seeking to have them in your class?...

> A    I guess I would say yes.

*See* Exhibit "A-10," Gonzales Deposition at p. 124:15-125:12 (side bar omitted). Accordingly, the Court will be required to review and analyze significant amounts of evidence and testimony as to whether the relevant employees performed "managerial" duties while supervising two or more employees. *See Gellhaus v. Wal–Mart Stores, Inc.,* 769 F. Supp. 2d 1071, 1078 (E.D. Tex. 2011). Specifically, the Court will have to receive and consider evidence with respect to every time an employee classified under the executive exemption performed such activities as: interviewing, selecting, and training employees; maintaining production or sales records for use in supervision or control; appraising employee's productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment, or tools to be used or merchandise to be bought, stocked, and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.  *Id*.

Additionally, the application of the Motor Carrier Act exemption to an employee "depends both on the class to which his employer belongs and on the class of work involved in the employee's job."  *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 472 (5th Cir. 2010) (quoting 29 C.F.R. § 782.2(a)).  The Court will have to examine the job duties of each plaintiff,

the vehicle they drove, whether a trailer was attached to the vehicle, and the interstate trips that each Plaintiff made over the course of their employment.

The analysis of the administrative employee exemptions will also require significant individualized inquiry. *Cruz,* 764 F.Supp.2d at 1062. The administrative exemption applies to employees whose "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200. The regulations provide examples of the type of job duties that will satisfy the management or general business operations requirement, such as work in finance, accounting, safety and health, and human resources. *See* 29 C.F.R. § 541.201(a)-(b). The Court or jury will need to assess each Plaintiff's level of discretion in carrying out the consulting work and whether it relates to matters of significance. *Cruz,* 764 F.Supp.2d at 1062. This separate analysis "must be applied in light of all the facts involved in the particular employment situation." 29 C.F.R. § 541.202(b). The inquiry will be more complicated given the varying nature of the jobs on which each putative class member worked.

Lastly, the Court will be required to determine whether certain class members meet classification criteria for the outside sales exemption. For this exemption, the Court will be required to consider evidence of each individual sale or sales attempt by the relevant employees, as well as the amount of time the employees spent in the field. *Christopher v. SmithKline Beecham Corp.*, 80 U.S. 4463, 132 S.Ct. 2156, 2171 (2012); *King v. Stevenson Beer Distrib. Co*., Civil Action No. 4:12–cv–911, 2014 U.S. Dist. LEXIS 41568, at *16 (S.D. Tex. Mar. 27, 2014).

The fact that the putative class of "Operators" was classified as exempt from overtime by Pipe Pros under four separate exemptions establishes: 1) that Plaintiff and putative class

-23-

members were not subject to a single decision, policy, or plan that violated provisions of the FLSA; and 2) the highly individualized analyses required by this case renders it unsuitable for collective treatment.

2.  **Pipe Pros's Defenses to the Putative Class's Damages Are Inherently Individualized.**

Pipe Pros will also have individualized defenses for claims of hours worked.  Numerous putative class members were disciplined or terminated for various reasons, including sleeping on the job and/or disappearing from job sites.  Others were disciplined for falsifying job tickets and/or collecting extra compensation for jobs or time not worked.  Such defenses will require highly individualized inquiries of what constitutes "time worked" under the FLSA and whether extra payments/bonuses must be included in the regular rate or can be credited against time Plaintiff and the putative class claim they are owed.  Such individualized defenses and issues render class certification improper and inefficient.  *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 742-45 (5th Cir. 2003) (reversing district court's certification of class where individual legal issues predominated).

3.  **Individualized Damage Calculations and Related Issues**

Additionally, courts have refused to certify classes where individualized damage issues make the class unmanageable because such issues eliminate any efficiencies associated with the collective action procedure.  *See O'Brien*, 2006 WL 3483956 at *4; *see also Smith*, 2005 WL 5336571, at *4; *see also England*, 370 F. Supp. 2d at 511; *see also Johnson*, 2005 WL 1994286, at *7 (ability to coherently manage the class is a crucial consideration); *see also King*, 2008 WL 5973490, at *5, n.23 (large number of witnesses required counseled against certification).  Such is the situation here.

-24-

Plaintiff seeks overtime compensation for all hours worked in excess of 40 hours per week.  *See* Plaintiff's Motion.  Determining the actual number of hours worked each week by each person requires an individualized inquiry.  Also, any weeks during which the particular Plaintiff and putative class members did not work would be excluded from the overtime period.  Vacation weeks would also be excluded, and the amount of vacations weeks taken varies from person to person.  The disparate job function of the opt-ins and unique circumstances of the plaintiff and the putative class requires Pipe Pros to present separate defenses and individualized evidence in response to each Plaintiff's allegations.

In sum, even if the Court believes that questions of liability are subject to a class-wide determination, which Pipe Pros disputes, the Court will nonetheless need to hold numerous separate mini-trials, each with its own evidence as to every individual's claims and damages.  Each mini-trial will require the use of individualized records regarding job duties, work hours and individual testimony.  *See King*, 2008 WL 5973490 at *5-6 (finding that mini trials, which undermine the nature of a collective action, would be necessary where plaintiffs testified they had different work hours).  Representative testimony will not sufficiently apprise the Court or the jury of the damages in this matter, and to allow such testimony by a few putative class members and Plaintiff will deprive Pipe Pros of its due process rights to defend against these claims.  *See id*; *see also Proctor*, 250 F.R.D. at 283-84 (ruling against use of representative testimony and granting motion to decertify; employees' testimony lacked consistency when the time spent working was not alleged to be uniform or of a predetermined duration).  Without question, the need for individual testimony from, and cross examination of what Plaintiff describes as a putative class of 150 Plaintiffs[5] undermines the primary objectives of proceeding collectively.  *See Andel*, 280 F.R.D. at 289-290; *see also Smith*, 2005 WL 5336571 at *4 (decertifying the

---

[5] *See* Ex. A to Plaintiff's Motion.

-25-

class where individualized proof required related to employer's knowledge of hours worked as well as individualized damages assessment required); *see also Proctor*, 250 F.R.D. at 283.  As such, the interests of fairness, judicial economy, and case manageability dictate that the conditionally certified class be decertified.

**G.     The Content of the Notice and the Process for Sending and Receiving Consents in Response to the Notice Should be Modified.**

If the Court deems conditional certification appropriate in spite of the individualized nature of the claims and lack of similarity between Plaintiff and the putative class, the Court should order the Parties to jointly draft a proposed, agreed upon form of notice.  The United States Supreme Court stated in *Hoffman-LaRoche* that "[i]n exercising the discretion to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality.  493 U.S. at 174.  To that end, trial "courts must be scrupulous to respect judicial neutrality by avoiding even the appearance of judicial endorsement of the merits of the action." *Id*. The district court may exercise discretion in not only defining the class to receive notice, but also as to how it will be notified.  *See Tolentino v. C & J Spec- Rent Servs.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010).

There is always a concern in collective actions that putative plaintiffs should receive appropriate notice.  *Hoffman-LaRoche*, 493 U.S. at 174.  This concern carries over into the issue of who should send and collect the notices.  To protect the neutrality and integrity of the process, courts may allow for the FLSA defendant or a neutral third party administrator to send the notices and for the court to receive the notices.  *See Tolentino*, 716 F. Supp. 2d at 655 (ordering that notices be returned directly to the court as opposed to plaintiff's counsel); *Yaklin v. W-H Energy Servs.*, No. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008) (holding that potential class members wishing to opt-in must return their notices to the court, not to plaintiff's counsel).  Here, however, a notice that is: (a) sent by Plaintiff's counsel; (b) provides the name,

-26-

address, telephone and facsimile number of Plaintiff's counsel as the sole source for more information about the case; and (c) instructs the recipient to return the completed form to Plaintiff's counsel, results in a situation where a recipient can only deduce that he must go through Plaintiff's counsel to participate. *See Yaklin*, No. C-07-422, 2008 WL 1989795, at *4 (refusing to circulate notice where: (1) plaintiffs' notice directed potential class members to contact only plaintiffs' counsel; (2) plaintiffs' notice directed potential class members to return completed opt-in forms to plaintiffs' counsel; and (3) plaintiffs' notice does not adequately explain Pipe Pros's bases for disputing liability).

To preserve the integrity of the notice process, Pipe Pros urges the Court to require Defendant or a third-party administrator to send the notices to the potential class members at Plaintiff's cost via first class U.S. mail only. *See Oliver v. Aegis Communications Group, Inc.*, No. 3:08-CV-828-K, 2008 WL 7483891, at *4 (N.D. Tex. Oct. 30, 2008) (cost of preparation and delivery of notice born by plaintiffs); *Lima v. International Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 802 (E.D. La. 2007) (same). The use of electronic mail endangers the integrity of the notice process because of the ease with which it can be copied, modified, or forwarded to disinterested parties and it should be avoided where traditional mail suffices. *Steinberg v. TD Bank, N.A.*, No. 10-CV-5600 RMB-JS, 2012 WL 2500331, at *10 (D.N.J. June 27, 2012) (refusing to allow "notice mechanisms beyond first class mail or contact information beyond mailing addresses"); *In re Bank of Am. Wage & Hour Employment Litig.*, 286 F.R.D. 572, 601 (D. Kan. 2012) ("the court is not persuaded at this time that e-mail notification above and beyond written notice mailed to the home addresses of putative class members is necessary"); *Petersen v. Marsh USA, Inc.*, No. 10 C 1506, 2010 WL 5423734, at *6 (N.D. Ill. Dec. 23, 2010) ("in the interest of promoting effective notice, plaintiffs may not provide notice via e-mail"); *Martinez v.*

-27-

*Cargill Meat Solutions*, 265 F.R.D. 490, 500-01 (D. Neb. 2009) ("notice by mailing is the only court-approved method for disseminating notice of plaintiffs' collective action").

Further, regardless whether a third-party administrator is used, Pipe Pros asks that the Court require any opt-in consents to be sent directly to the Court, not to Plaintiff's counsel. Pipe Pros also requests the opportunity to modify the notice so that it adequately states Pipe Pros's legal position, i.e., that "Operators" were paid a substantial monthly rate and day bonus as properly classified exempt employees not subject to the FLSA. A defendant is entitled to include in the notice a "brief explanation of [d]efendant's bases for disputing liability." *Yaklin*, No. C-07-422, 2008 WL 1989795, at *4. Pipe Pros specifically contends that the following paragraph be inserted:

> Pipe Pros denies Plaintiff's allegations. It is Pipe Pros position that it has properly classified "Operators" as exempt employees. The FLSA does not require the payment of overtime to exempt employees. Pipe Pros asserts that it has properly paid all Operators as required by law, and that neither plaintiff nor any other Operaotr should receive any recovery for alleged unpaid overtime.

There are multiple other issues with Plaintiff's proposed notice. As such, Pipe Pros requests that any approved notice make clear to the putative class members that the named Plaintiff will be representing their interests and will be responsible for strategy and litigation-related decisions. Similarly, Pipe Pros requests that the notice be modified to inform that potential plaintiffs may contact any attorney of their choosing, including providing contact information for defense counsel, not just Plaintiff's counsel. *Tolentino*, 716 F. Supp. 2d at 655. *See also Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG) (RER), 2007 U.S. Dist. LEXIS 75817, at *24 (E.D.N.Y. Oct. 11, 2007) (finding it appropriate to notify putative plaintiffs they may seek additional information and to include the defense attorneys' contact information); *Fortna v. QC Holdings, Inc.*, No. 06-CV-0016-CVE-PJC, 2006 WL 2385303, at *11 (N.D. Okla. Aug. 17,

-28-

2006) (approving notice directing putative plaintiffs to counsel for the plaintiffs and the defendants); *Gerlach v. Wells Fargo & Co.*, No. C 05-0585 CW, 2006 U.S. Dist. LEXIS 24823, at *14 (N.D. Cal. March 28, 2006) (approving a "Further Information" provision in a notice including defendants' counsel's contact information); *Cheesman v. Nextsar Broadcasting Group, Inc.*, No. 2:07CV360-RLY-WGH, 2008 WL 2225617, at *3 (S.D. Ind. May 27, 2008) (requiring "Inspection of Papers and Questions" section of notice to indicate putative plaintiffs had the right to contact defense counsel).

Finally, Pipe Pros asserts that individuals who wish to join this lawsuit should submit their opt-in forms to the Court within thirty (30) days of the date of approval of the notice. Thirty (30) days is reasonable, particularly in light of the notice provided orally and electronically by the Plaintiff to former employees. *See* Plaintiff's text messages to putative class members, attached to this Response as Exhibit "D."

## VI.   CONCLUSION

Plaintiff has not met his evidentiary burden to demonstrate that this Court should conditionally certify a collective action.  Indeed, Plaintiff's claims do not arise to collective action status because they require the Court or a jury to analyze a plethora of factual circumstances unique to each individual worker.  With various factors such as demands of their Field Supervisors, the company man, the client, the specific worksite, the work being performed on the worksite that day, and day-to-day work conditions such as weather affecting and controlling job duties of "Operators", there are no putative class members that are similarly situated to Plaintiff.  Plaintiff has put forth no testimony or evidence demonstrating otherwise.

For the foregoing reasons, Pipe Pros requests this Court deny Plaintiff's Motion for Conditional Certification or, in the alternative, direct the Parties to jointly modify the proposed notice as outlined above.

Respectfully submitted,

**MUNSCH, HARDT, KOPF & HARR, P.C.**

By: /s/ Daniel D. Pipitone

    Daniel D. Pipitone
    State Bar No. 16024600
    700 Milam Street, Suite 2700
    Houston, Texas  77002
    Telephone: (713) 222-1470
    Facsimile: (713) 222-1475
    dpipitone@munsch.com

**ATTORNEY IN CHARGE FOR DEFENDANT PIPE PROS, LLC**

**OF COUNSEL:**
**Munsch Hart Kopf & Harr**
700 Milam Street, Suite 2700
Houston, Texas 77002

**Michael A. Harvey**
Texas Bar No. 24058352
700 Milam Street, Suite 2700
Houston, Texas 77002
Tel: (713) 222-4015
Fax: (713) 222-5834
mharvey@munsch.com

<u>**CERTIFICATE OF SERVICE**</u>

    I hereby certify that a true and correct copy of the foregoing has been served on counsel of record by means of ECF this 19th day of June, 2015:

Clif Alexander
SICO, WHITE, HOELSCHER, HARRIS & BRAUGH LLP
802 N. Carancahua, Suite 900
Corpus Christi, Texas 78401

Timothy D. Raub
RAUB LAW FIRM, P.C.
814 Leopard Street
Corpus Christi, Texas 78401

        /s/ Daniel D. Pipitone
        Daniel D. Pipitone

-30-