UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


JOHNNY GONZALES,              ) CASE NO: 2:15-CV-00065
                              )
          Plaintiff,     )      CIVIL
                              )
    vs.                  ) Corpus Christi, Texas
                              )
PIPE PROS, LLC,             ) Friday, August 14, 2015
                              )
             Defendant.    ) (9:58 a.m. to 10:49 a.m.)


CLASS CERTIFICATION HEARING

BEFORE THE HONORABLE NELVA GONZALES RAMOS,
UNITED STATES DISTRICT JUDGE



APPEARANCES:         See page 2

Court Recorder:      Genay Rogan

Clerk:             Brandy Cortez

Court Security Officer:  Armando Ayala

Transcribed by:      Exceptional Reporting Services, Inc.
                    P.O. Box 18668
                    Corpus Christi, TX 78480-8668
                    361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

APPEARANCES:


For Plaintiff:              WILLIAM C. ALEXANDER, ESQ.
                            Phipps Anderson Deacon
                            819 N. Upper Broadway
                            Corpus Christi, TX 78401

                            TIMOTHY D. RAUB, ESQ.
                            814 Leopard Street
                            Corpus Christi, TX 78401

For Defendant:              DANIEL D. PIPITONE, ESQ.
                            MICHAEL A. HARVEY, ESQ.
                            Munsch Hardt Kopf & Harr
                            700 Milam Street
                            Suite 2700
                            Houston, TX 77002

Also present:               GARY EDWARDS, Owner of Pipe Pros, LLC

1        <u>**Corpus Christi, Texas; Friday, August 14, 2015; 9:58 a.m.**</u>

2                              **(Call to Order)**

3              **THE COURT:**  Court calls Cause Number 2:15-CV-65,

4    *Gonzales v. Pipe Pros.*

5              Plaintiff will announce for the record.

6              **MR. ALEXANDER:**  Good morning, your Honor.  Clif

7    Alexander and Timothy Raub for Mr. Gonzales.

8              **MR. PIPITONE:**  Good morning, Judge.  I'm Dan Pipitone

9    for Pipe Pros.  Also with me is my partner, Michael Harvey.

10   And I also have with me Gary Edwards, who is one of the owners

11   of Pipe Pros.

12             **MR. EDWARDS:**  Good morning.

13             **THE COURT:**  Good morning.

14             All right, we're here on Plaintiff's Motion to

15   Certify the Action.

16             Do you want to proceed?

17             **MR. ALEXANDER:**  Yes, your Honor.  May I approach the

18   podium?

19             **THE COURT:**  Yes.

20             **MR. ALEXANDER:**  Your Honor, I think the Court's full

21   aware of the exercise here today of conditional certification.

22   We're at the notice stage, the first stage of the conditional

23   certification process, and, you know, what does that mean?

24   Well, we need to show that Mr. Gonzales and the individuals

25   that he worked with, not only in locations here in Texas, but

1    outside of the state and within Pipe Pros in general, were they

2    similarly situated.  And what does that mean?  Well, do they

3    share similar job duties?  Do they do the same thing?  Were

4    they paid the same way?  And I think that, not only through our

5    briefing, our pleadings that are on file, Mr. Gonzales's

6    Declaration, and also Pipe Pros' Response and their

7    Declarations of nearly 35 current employees of Pipe Pros in

8    several different job positions, I've got them listed here,

9    field supervisor, floor hand, torque turn operator, torque turn

10   tech, com operator, stabber, helper, and tripper operator, are

11   the individual or positions that provided Declarations, along

12   with Pipe Pro's Response, and what we have there is a

13   confirmation that, regardless of where these individuals

14   worked, regardless of what their job title was, and regardless

15   of what they did, they were all paid the same way.

16        **THE COURT:**  How were those all similar with respect

17   to the Plaintiff in terms of duties?

18        **MR. ALEXANDER:**  In terms of duties here --

19        **THE COURT:**  Because I think when you came back, the

20   Plaintiff on the Reply, and changed the scope of the class, I

21   just don't see how everyone can be similarly situated to the

22   Plaintiff.

23        **MR. ALEXANDER:**  Okay.  Your Honor, in response to

24   that, what we've seen in a lot of these cases, that, you know,

25   the evidence of a single decision, policy, or plan is what we

1  really need to look at in terms of a class-wide, you know, were

2  they treated the same way.  In terms of job duties, in terms of

3  what they were doing, most, if not all, of these employees

4  worked side-by-side on location together.  They may have --

5          **THE COURT:**  That's one thing where they may be

6  similarly situated.  I just wasn't sure, the way I read the

7  proposed class is kind of everyone, regardless of title.

8          **MR. ALEXANDER:**  Sure.  And we can narrow that down,

9  your Honor.  Obviously, we don't want -- we don't --

10         **THE COURT:**  It was a little tough, you all started

11 out with operators and Defendant says we don't have operators,

12 and I think that might be where an issue is if the class is

13 certified, but --

14         **MR. ALEXANDER:**  Sure.

15         **THE COURT:**  -- go ahead.

16         **MR. ALEXANDER:**  And, obviously, we don't intend to

17 say that Mr. Edwards, for example, if he were paid this way

18 would be an eligible class member.  We can definitely narrow

19 that down and say all non-managerial field personnel.  I think

20 we've done that in a similar case.  I believe it was *Thomas, et*

21 *al v. High Capacity* in front of Judge Libby, and which, as you

22 recommended, we've entered that Order.

23         And so from a -- I guess what they do on a general

24 basis, you know, they are not the exact same thing, but

25 again --

1      **THE COURT:**  And it doesn't have to be --

2      **MR. ALEXANDER:**  Right.

3      **THE COURT:**  -- but you have to have some

4  similarities.

5      **MR. ALEXANDER:**  Sure.  And I think a lot of these

6  folks, they're doing similar job duties, they're all working

7  towards a common goal when they're out on a location.  They may

8  have, you know, a different job title.  As the Court knows,

9  that's not the test.  I mean it's what are they doing and how

10 are they getting paid.  And more so than that is did this

11 company make a kind of blanket class-wide decision to pay these

12 people a certain way, and not only is it a certain way, salary

13 plus the hourly job bonuses, but everyone's classified as

14 exempt.

15      And so, you know, there's I think case law out there,

16 the different Orders that have been entered, not only here, but

17 throughout the Southern District and even Fifth Circuit, say,

18 look, you know, if there is this evidence of a single kind of

19 policy, decision, or plan, which we have here, then, at least

20 for purposes of conditional certification, that's enough.  And

21 if we can -- if we go through discovery and we get to the

22 decertification stage and Mr. Pipitone and his client want to

23 file a motion to decertify, they're well within their right to

24 do that and the Plaintiffs understand that there is a higher

25 standard at that point, but for purposes of the first stage,

1  the notice stage, where we are now, you know, this kind of

2  evidence of a single decision, policy, or plan, which Pipe Pros

3  has, is enough for conditional certification to send out

4  notice.

5          And just to add, you know, just in response to some

6  of the arguments made in the response, and I'm sure will be

7  made today in the hearing, is that, you know, there's numerous

8  cases throughout the Southern District, this Court,

9  Fifth Circuit, that this is not a numerosity, there is no

10 numerosity requirement.  This is a Rule 22 class action.  We

11 have one plaintiff, but that doesn't mean that we have to have

12 more than one plaintiff to show that there are people that want

13 to join.

14          This is not a merits case inquiry.  There was a lot

15 of briefing and a lot of argument in not only the Response, but

16 the Sur-reply, that, well, these folks are exempt or they got

17 paid the right way or stuff like that.  Well, you know, again,

18 that's not for us to talk about here today.  That's down the

19 line when we've engaged in significant discovery and

20 discovery's almost over.

21          I have a feeling that Mr. Pipitone and his client are

22 going to argue that, well, we had the opportunity to take

23 discovery, but, again, that's not the test either.  The test

24 here is that, look, there is little to no discovery been taken.

25 Mr. Gonzales was deposed.  They sent out one set of discovery.

1    You know, there's not even -- there's not a scheduling order in

2    place here.  There's no deadline for discovery here.

3    There's -- you know, Plaintiffs are not required to engage in

4    discovery before the Court rules on conditional certification.

5              And the last thing that I just -- I've not

6    encountered this before, your Honor, and I thought it was very

7    odd, that Pipe Pros' counsel, not only Mr. Pipitone, but

8    Mr. Harvey and other attorneys within the firm, actively sought

9    out potential class members, current employees at Pipe Pros,

10   and met with them outside of the presence of anybody else,

11   including myself.  And, you know, I have no idea what they were

12   told, but at some point they were convinced to give a

13   declaration in support of Pipe Pros' arguments.  And, you know,

14   going forward I think I'd like to have an opportunity to talk

15   to each and every one of those people to find out exactly what

16   they were told, to find out if they received accurate

17   information, if they were intimidated in any way to not join

18   the class -- excuse me -- to join the case.

19             Because I will say, your Honor, we do this quite a

20   bit.  We have quite a few wage and hour cases, not only in

21   front of this Court, but others, and this has never happened to

22   us and I think it's very -- it borderlines on ex parte

23   conversations and, you know, we feel it's improper at this

24   stage.

25             And I'm sure, your Honor, you're aware that in

1  previous cases we've had a very similar, if not identical,

2  class conditionally certified.  In *Lopez, et al v. Allis-*

3  *Chalmers Energy Inc.*, 2:11-CV-353 -- and my understanding, if

4  my memory holds true, is that Mr. Edwards was actually a

5  district manager with Allis-Chalmers and then Archer before he

6  went to Pipe Pros.  And, while we have a somewhat different

7  classification issue in Allis-Chalmers, it's a very similar, if

8  not identical type of company, in what they do, in the people

9  they employ.  I think if you look at some of the Declarations

10  there's, in fact, a lot of former Allis-Chalmers and Archer

11  employees that went to work for Pipe Pros, along with

12  Mr. Edwards, and they shared the same job titles, the same job

13  duties, and the same kind of misclassification, or at least

14  treatment of being classified as exempt employees paid on

15  salary plus a job bonus pay structure and no overtime.

16       And again, going back to 2:11-CV-353, in Mr. Lopez's

17  case, Docket 92 is where we had a class definition or

18  conditional class certification and those went out to coil

19  tubing operators, laydown operators, laydown assistants,

20  service techs, mud tool hand, hammer techs, shop hands, fill-up

21  tool operators, dispatchers, drivers, district administration

22  workers, and pushers, which were also known as field

23  supervisors or service supervisors, casing floor hands,

24  stabbers, and tong operators.  And again, looking back at the

25  Declarations that Pipe Pros provided in their response, these

1  are identical job titles, these are identical job positions,

2  and they were paid the same way that we dealt with in that

3  case, or at least with a certain subclass of that case.

4         So, your Honor, again, through our briefing, through

5  our pleadings, our affidavits on file, I think the evidence

6  also from Pipe Pros is that we have met our conditional

7  certification burden, which again at the notice stage is a very

8  lenient burden.

9         **THE COURT:**  All right.

10        **MR. ALEXANDER:**  Thank you, your Honor.

11        **THE COURT:**  Thank you.

12        Mr. Pipitone?

13        **MR. PIPITONE:**  May it please the Court.  Judge, I may

14 rattle on a little bit longer than Mr. Alexander did, with the

15 Court's permission.

16        The first thing I'd like to point out is this *Lopez*

17 case that Mr. Alexander just referred to the Court to.  I was

18 not involved in that case.  I don't know nearly as much about

19 it as Mr. Alexander probably does and your Honor does.  But one

20 thing I do know is that in *Lopez* the defendants argued simply

21 the application of one exemption.  And here in our case with

22 Pipe Pros we're offering the possibility of our different

23 exemptions, all of which would require individual scrutiny by

24 the Court as to whether each of the employees qualified under a

25 particular exemption or not.  Because all employees, as

1  Mr. Alexander now has expanded the class to include, all

2  employees would include Mr. Edwards, who is an employee of the

3  company.  It would include sales people.

4          **THE COURT:**  We're not going to all employees.  I

5  think that wasn't clear from my discussion with the Plaintiff.

6  I think that's too broad.

7          **MR. PIPITONE:**  All right.  And, your Honor, just so

8  you're aware, even with tong and tripper operators, some

9  different exemptions may apply because some of them have sales,

10  outside sales requirements, some are managerial, and some even

11  may qualify under the Motor Carriers Act exemption.  So each of

12  them would even require an individual examination by this Court

13  as to whether or not exemption applies.

14          But I got a little bit off what I had planned on

15  saying to your Honor.  The first thing I really wanted to talk

16  about was the fact that so many times the focus is upon

17  plaintiffs in these types of cases.  The fact is for every type

18  of case.  I've practiced law now for 36 years and I've

19  predominately represented defendants and it's always surprised

20  me that the focus is always upon the plaintiffs, even though

21  the defendants are made up of people, in this case Mr. Edwards

22  and Mr. Armando Valdez are the owners of Pipe Pros, they have

23  assumed great risks to start their company.  More risk than any

24  Plaintiff in this case would bear, because they've assumed the

25  risk of the oilfield going the way it has in the last few

1  months, most of this year and part of last year.  So they've

2  assumed great risks.  A great number of employees rely upon

3  these people, yet they're never perceived to be the victim in

4  these cases and the way these laws are stacked up, and the

5  Fair Labor Standards Act especially, sometimes they feel as

6  though they're impotent to do anything.  These class actions

7  start and there's so little they can do to stop them.

8          And I just would like the Court to take a -- just

9  focus upon a little bit too the plight of the defendants,

10  because sometimes they can be put into such dire straits that

11  their business can be affected dramatically.  And it's not just

12  the owners that are affected, Judge, it's all the employees

13  that work for them.  And in this case we have at least

14  34 people who are absolutely thrilled with their compensation

15  package, which they believe to be legal, fair, and it provides

16  them with some reliability of income.

17          **THE COURT:**  Okay.  And I get that.

18          **MR. PIPITONE:**  Okay.

19          **THE COURT:**  The law is fairly lenient at this stage

20  one.  And people can be thrilled with their wages and all, but

21  that doesn't mean they're compliant with FLSA requirements.

22          **MR. PIPITONE:**  Right.

23          **THE COURT:**  So I get it --

24          **MR. PIPITONE:**  Okay.

25          **THE COURT:**  -- it's just the law is what it is.

1    **MR. PIPITONE:**  And I appreciate that, your Honor, so

2  let me move on.  That's -- I just didn't want to lose sight of

3  the defendants' plight and the fact that they can be a victim

4  in these cases, more than some perception that an employer

5  abuses an employee by not paying overtime or mischaracterizing

6  them.

7       **THE COURT:**  In a lot of the cases we do deal with in

8  the FLSA context the employees are getting paid very well, but

9  that's not the question for the Court.

10       **MR. PIPITONE:**  Well, it could be a question

11  ultimately, though, if they're highly compensated employees.

12  And most of the people that work at Pipe Pros are in that

13  hundred thousand dollar, a hundred thousand dollars per year

14  group where they could be considered highly compensated.  Which

15  will require more scrutiny by this Court as to individually

16  whether they would qualify under that exemption or not.

17       But I'll move on to the issues here at hand.  And the

18  one question that exists in a -- the notice stage, and in

19  *Lusardi* there's two stages, the notice and decertification

20  notice stage.  The *Lusardi* Court also referenced a third

21  question.  They talked about similarity and the other things,

22  but the third question that they talked about, your Honor, was

23  whether there was an indication that there are other

24  individuals willing to join the class.  And it was incumbent

25  upon the plaintiff, it's the plaintiff's burden to establish to

1   the Court that there are other people interested in joining the

2   class.

3           **THE COURT:**  Okay, and let me just butt in right here,

4   because I did not see that in the briefing.  Is that -- I know

5   you said there's no numerosity required, but some Courts do

6   require at least one or some interest or some showing.  And

7   maybe I went through this a little too quickly, but was that

8   set out?

9           **MR. ALEXANDER:**  Your Honor, I'm not sure if we set it

10  out too much in our briefing.  I will represent to the Court

11  that Mr. Gonzales is a former employee who left the company

12  almost nine months ago, eight months, I believe.  So, you know,

13  he doesn't have -- he has very little to no contact with these

14  folks.  I'm sure Mr. Pipitone will bring up the fact that

15  somebody reached out a few years ago, Mr. Gonzales reached out

16  to some of his former coworkers, and those folks, specific

17  individuals, were not interested.

18          But again, you're right, your Honor, we don't have a

19  numerosity requirement here.  And what I'd add on that is that,

20  again, we already have evidence that counsel has gone and

21  spoken about this case to current employees.  We are unaware if

22  they've spoken to former employees as well.  And again, I have

23  no idea what they've been telling these people, whether it's

24  accurate, whether there's been any type of discouragement from

25  joining the class.  I don't know.

1    But it terms of whether or not we have briefing on

2   the number of individuals, no, your Honor, Mr. Gonzales is the

3   one sole opt-in at this moment.  I will represent to the Court

4   that we have talked with other individuals who are likely to

5   opt-in very soon.

6        **THE COURT:**  All right, thank you.

7        Mr. Pipitone?

8        **MR. PIPITONE:**  And, your Honor, if I can, let me

9   address just one comment that's come up now twice.  Pipe Pros

10  is permitted to talk to their employees.  There is no class

11  right now.  There is nothing illegal, nothing wrong, nothing

12  unsavory about us talking to our employees.

13       If Mr. Alexander truly has a concern that these

14  34 declarants were forced into signing these declarations and

15  weren't happy campers, as he referred to them, they had four

16  and a half months to take their depositions, your Honor.  So I

17  don't necessarily appreciate that reference to the fact that

18  Pipe Pros or its attorneys would in any way coerce the

19  declarants to make statements.

20       Going back, though, to the third requirement in

21  *Lusardi* that people have to -- that the plaintiff has the

22  burden of showing that there's an interest in joining the suit,

23  your Honor, what I would like to do, if I may, I would like to

24  provide the Court with a copy of the *McKnight* Opinion and also

25  excerpts from Mr. Gonzales's deposition.

1      **(Documents tendered to the Court)**

2              And, your Honor, if I could, the *McKnight* Opinion was

3      written by Judge Rosenthal in the Houston Division of this

4      District and is dated November 18th of 2010 and if I could

5      direct the Court to Page 13.  There are certain areas that are

6      highlighted there and it starts out on the top on the left

7      side, and this is, obviously, from the Southern District of

8      Texas as recent as five years ago, "The third *Lusardi* question

9      is whether evidence shows that other aggrieved employees want

10     to join the class."

11             So there is a requirement, there is a burden on the

12     Plaintiff to show that other employees are interested in

13     joining the class.

14             A plaintiff -- the case goes further to say:

15             "A plaintiff must do more than show the mere

16             existence of other similarly situated persons,

17             because there is no guarantee that those persons will

18             actually seek to join the lawsuit."

19             It goes on to say, too, your Honor:

20             "Affidavits from potential class members affirming

21             their intention to join the suit are ideal."

22             It also goes on to say:

23             "Affidavits are advisable so an employee will not

24             be -- excuse me.

25             "Affidavits are advisable so an employer will not be

1          unduly burdened by a frivolous fishing expedition

2          conducted by a plaintiff at the employer's expense."

3          It goes on to say as well, your Honor:

4          "Plaintiff may submit some other form of evidence

5          that the additional aggrieved persons exist and want

6          to join the suit.

7          "A District Court should satisfy itself that are

8          other employees who desire to opt-in and who are

9          similarly situated with respect to their job

10         requirements and with regard to their pay provisions.

11         "An FLSA plaintiff is not entitled to conditional

12         certification simply to seek out others who might

13         wish to join the action."

14         So that is the law, at least as Judge Rosenthal wrote

15    five years ago, that's applicable here in this District.

16         And, your Honor, the other thing I would like to

17    point out to you is I've given you the Plaintiff's deposition

18    transcript and we don't need to go through all of this, but let

19    me explain to you briefly what's happened here.  At one point

20    Mr. Gonzales, the Plaintiff in this case -- excuse me -- did

21    try to reach out to employees of whom he was aware.  And in his

22    deposition, your Honor, on Page 10, Line 17, he said that he

23    sent out this text message to 20 people, perhaps more, and in

24    this text message he said:

25         "Hey, I've brought a suit against Pipe Pros.  All you

1          have to do is opt-in to get your money.  I've talked

2          to Mr. Alexander's law firm.  Call me and we can get

3          you signed up to be in this lawsuit."

4          So he was actively soliciting 20 or more employees to

5     join this lawsuit.

6          **THE COURT:**  Out of how many possible employees?

7          **MR. PIPITONE:**  I'm sorry, your Honor?

8          **THE COURT:**  Twenty out of how many employees?

9          **MR. PIPITONE:**  You know, your Honor, I can't give you

10    a total amount of employees, but I could ask Mr. Edwards, if

11    that would be helpful.

12         **THE COURT:**  Yeah, just an estimate.  I don't know how

13    many work there.

14      **(Mr. Pipitone confers with Mr. Edwards)**

15         **MR. PIPITONE:**  There's about 35 employees that work

16    there now.

17         **MR. ALEXANDER:**  Your Honor --

18         **MR. PIPITONE:**  I'm not sure how many worked there in

19    the past.

20         **THE COURT:**  You can respond in a little bit.

21         **MR. PIPITONE:**  I'm not sure how many worked there in

22    the past.

23      **(Mr. Pipitone confers with Mr. Edwards)**

24          We can come back to the Court on that.

25          But here is the important part, your Honor.  Not only

1   has the Plaintiff failed to meet his burden in showing this

2   Court that there are other people that are interested in

3   joining this lawsuit, he's actually provided testimony to the

4   opposite.  In essence, if you look, Judge, on Page -- the last

5   page of the submission I've given you, your Honor, Page 25,

6   you'll see where it's highlighted a the very bottom:

7           "Do you know of anyone --

8           This includes the 20 or more people that he's tried

9           to contact.

10          "Do you know of anyone who has indicated any interest

11          whatsoever in joining you in your lawsuit against

12          Pipe Pros?"

13          And his answer is "I do not know."

14          So, your Honor, not only does he not meet his burden,

15  he goes one step further and assists Pipe Pros in proving

16  through his own testimony that he doesn't know of anyone who's

17  interested in the least in joining this lawsuit after he

18  solicited 20 people or more.

19          Your Honor, I'd like to just digress for a second,

20  because in Mr. Gonzales's Declaration that was attached to his

21  motion, which is the only evidence that the Plaintiff submits

22  in support of his motion, but in that Declaration, Judge,

23  Paragraph 21, he says in his Declaration that he has personal

24  knowledge that there's other operators interested in joining.

25  Now, the rest of the Declaration is pretty much boilerplate

1  language, but I want to point out that Paragraph 21 of the

2  Declaration is totally opposite, totally inconsistent with

3  Mr. Gonzales's sworn testimony during the course of his

4  deposition.  Which, in my mind, and hopefully in the Court's

5  mind as well, places some question as to the reliability of his

6  Declaration in the first instance.

7        And if the Declaration isn't reliable, your Honor,

8  there is absolutely no evidence that the Plaintiff has

9  submitted that supports his Motion for Conditional Class

10  Certification.  No evidence of any kind about similarly

11  situated or anything else.

12        So, your Honor, I think, based on the _McKnight_

13  Opinion and _Lusardi_, the third question in _Lusardi_, there is no

14  interest on anyone's behalf that the Plaintiff can show this

15  Court that anyone would be interested in joining this class.

16  And I think on that reason and that reason alone your Honor is

17  perfectly permitted with your discretion to enter -- to reject

18  the motion and reject the possibility of a class.

19        The second thing I'd like to talk to the Court about,

20  and this is if -- even if your Honor gets past that point,

21  which hopefully doesn't occur, but I do want to talk about the

22  fact that there is a more stringent standard that should be

23  applied here in this case.

24        This case was filed in January of this year.  It's

25  been in existence now for some eight months.  We answered in

1    the very first of March.  The Joint Discovery Case Management

2    Plan with the preceding Rule 26 meeting occurred on April 1st,

3    2015.  So there's been four and a half months to conduct

4    discovery.  And, your Honor, the Defendants have conducted

5    discovery.  We've sent written discovery propounded on the

6    Plaintiff, got answers, went ahead and took the Plaintiff's

7    deposition.

8           But I went one step further, Judge.  On June 19th,

9    roughly a week or so after the Plaintiff's deposition, I

10   actually sent a letter to Mr. Alexander saying, look, we offer

11   you any type of discovery you want.  Anybody you want to

12   depose, we'll produce them for you.  We encourage you to take

13   depositions.  We encourage you to do whatever discovery you

14   feel like you need to do.  But nothing has occurred.

15          So, your Honor, I do propose -- and there's cases

16   cited in our briefs that talk about applying the more stringent

17   standard that would be applicable in a decertification process.

18   One of those cases says that three months for the opportunity

19   to do discovery is sufficient, and here we have four and a

20   half, slightly -- well, almost four and a half months to do so.

21   So I would hope that the Court would apply the more stringent

22   standard and require more evidence from the Plaintiff for the

23   class certification.

24          Your Honor, we already talked about the all operators

25   versus the tong and tripper operators change.  What I really

1  would then point out to the Court is, once again, that the

2  burden is upon the Plaintiff, that he has not been able to

3  show, by his own testimony that's pointed out in our briefs,

4  that the whole class that he proposes is similarly situated.

5  He simply isn't in a position to do that because he doesn't

6  even know the nature of the other work that other employees of

7  Pipe Pros do.  And he said that clearly during the course of

8  his deposition.

9       So how can the Plaintiff propose a class when he

10  doesn't even really know what the class would be comprised of?

11  He doesn't know its composition.  He doesn't know the different

12  job duties of the sales people, the truck drivers, even the

13  people that work out in the field at the various rigs.  He

14  simply doesn't know.  And, moreover, more importantly for

15  purposes of this hearing, he hasn't presented any evidence,

16  Judge.  It's one thing for Mr. Alexander to say that which he

17  wishes.  But there's no evidence before this Court, other than

18  a Declaration of the Plaintiff, which we already have shown in

19  one particular provision is inaccurate, is false.

20       So the Plaintiff has not met his burden.

21       On the other hand, your Honor, we've put in

22  34 different Declarations from various employees that work

23  here.  They all talk about having different job duties.  They

24  talk about different functions they perform.  They talk about

25  different geographical areas.  There's eight different states

1  that Pipe Pros operates in.  Louisiana, Texas, Arkansas, all

2  the way up to Pennsylvania, just to name a few.  And in each

3  situation there are different responsibilities that they have.

4          And, Judge, I'd point out one other case to you.

5  It's the *Tolentino* case that Judge Jack decided.  When she had

6  a service company, much like Pipe Pros, when the employees were

7  involved in fracking wells or cementing in different wells, she

8  said -- Judge Jack said that the various job functions were so

9  disparate that you couldn't make a class out of them.  And

10  that's the *Tolentino* Opinion that Judge Jack wrote and that was

11  in 2010.  She said they just simply weren't similarly situated

12  as a consequence of the different job responsibilities that

13  they had.

14          So not only can the Plaintiff not even name the

15  different job functions, he certainly can't describe them.

16          But what's really important to this Court, Judge, is

17  the whole idea of a class is so that you have everybody that's,

18  not identical, but certainly similarly situated in such a way

19  so that the Court doesn't have to engage in an individual

20  analysis.  And that's not possible here because most of these

21  employees are doing different things under different

22  guidelines, different policies, different job functions that

23  they're performing.  Whether they are exempt under a myriad of

24  different exemptions, administrative, managerial, outside

25  sales, Motor Carriers Act, highly compensated, your Honor's

1  going to have to say at some point during the trial in this

2  matter, all right, he gets the MCA exemption, she gets the

3  administrative exemption, he might qualify for the outside

4  sales exemption, and those types of decisions are going to have

5  to be made by the Court on an individualized basis based on the

6  facts of this case.  And the class obviously isn't -- the

7  concept of having a class action or a collective action isn't

8  served, judicial economy is not served, judicial efficiency is

9  not served because of the disparate nature of all these

10  employees and the nature of the work that they're doing.

11         Lastly, your Honor, Mr. Alexander talked in terms of

12  a single policy.  You know, the single policy, and we said this

13  in our brief and cited some cases to it, the fact that they

14  weren't paid overtime, some employees weren't paid overtime,

15  that's not the single policy that's really applicable here.

16  The policies are this, Judge:  Pipe Pros applied a myriad of

17  different exemptions, five different exemptions, to some of

18  their employees to determine whether they were entitled to

19  overtime or not.  The ones that were exempt didn't get

20  overtime.  The ones that were not exempt did get overtime.  And

21  so Pipe Pros went through that analyses for all of their

22  employees using all of the exemptions possible and so those are

23  the policies.  There's not just one single policy, there's a

24  number of policies that Pipe Pros employed.

25         **THE COURT:**  There might be a single policy regarding

1   a certain group of workers who maybe do a similar type of job.

2          **MR. PIPITONE:**  And let me address that, your Honor,

3   because if you focus upon the tong and tripper operators that

4   Mr. Gonzales first referenced, because that's the only jobs

5   that he did and those are the only jobs which he was aware of

6   their functions, even the tong and tripper operators could be

7   different.  It will require an individual analysis as to

8   whether the exemptions apply.  Because some tong and tripper

9   operators supervise other people.  Some tong and tripper

10  operators actually drove motor vehicles that weighed more than

11  10,001 pounds and drove them interstate, so the MCA,

12  Motor Carriers Act, exemption might apply.  Some were

13  responsible for some outside sales.  So there will still be,

14  even with that class, if your Honor goes with such a narrow

15  class as tong and tripper operators, even that class will

16  require some individualized assessments, analyses, as to

17  whether the exemptions apply or not.

18          So, your Honor, I just -- there seems to be a moving

19  target here as to what the class is or proposed to be or may or

20  may not be.  You know, I came in prepared for the all employees

21  class.  I hope I've answered your questions on even the smaller

22  class of tong and tripper operators.

23          One thing I may do, with your Honor's permission,

24  I'll ask Mr. Edwards how many employees might have existed back

25  in 2013.

1          **(Mr. Pipitone confers with Mr. Edwards)**

2                So perhaps a hundred at the most, your Honor, is what

3     Mr. Edwards is thinking, just, you know, off the cuff.

4                **THE COURT:**  All right.

5                **MR. PIPITONE:**  Thank you, Judge.

6                **THE COURT:**  I think, Mr. Alexander, we do need to --

7     I know it's a very light minimal burden regarding if there is

8     others who want to join, but that is what the cases say.  And

9     usually there is something, whether it's an affidavit or --

10    even if it's one, some of the cases say one is sufficient,

11    someone showing an interest or that they may want to join or

12    someone else and just -- and sometimes I miss it in the

13    evidence, but I'll usually catch it if it's in the briefs.

14    Sometimes you all attach a lot of evidence and I skim through

15    the evidence a little bit quicker.  So -- and I think that's a

16    problem, so I want everyone to address that first.

17                **MR. ALEXANDER:**  Sure, your Honor, if I may respond.

18    I'll point the Court to a few other Southern District cases.

19                **THE COURT:**  Because I think this very Court has held

20    that in the past and I'm trying to be consistent.

21                **MR. ALEXANDER:**  Sure.  If you look at one of

22    Judge Atlas's Opinions, *Villatoro v. Kim Son Restaurant* out of

23    2003, a case, I don't know, it's 286 F.Supp.2d 807 and the

24    pertinent language is at 810/811.  And there Judge Atlas

25    conditionally certified a class with a single declaration and,

1   important to this case, employer documents showing that there

2   was this kind of over-arching single decision, policy, or plan.

3   And not just because that Pipe Pros said that these guys are

4   exempt or that they didn't get paid overtime, not only do we

5   have that, but the conditional class that we're looking to --

6   or, excuse me, the class that we're looking to conditionally

7   certify is these individuals, these non-managerial positions

8   that were paid on the same way, salary plus an hourly job

9   bonus --

10          **THE COURT:**  They still have to be similarly

11  situated --

12          **MR. ALEXANDER:**  Sure.

13          **THE COURT:**  -- to the employee.  It's got to be the

14  type of work he does.  And it doesn't have to be identical.  I

15  think that's where the rub would be if we certified this, you

16  know, Defendants wanting to narrow it, Plaintiffs wanting to

17  enlarge it a bit.  But I don't think you can talk or represent

18  everybody who may not have been paid properly.  They have to be

19  similar situated to him, so he can speak about it.

20          **MR. ALEXANDER:**  Sure, and --

21          **THE COURT:**  Or know about it.

22          **MR. ALEXANDER:**  Well, I think, you know, whether --

23  whereas Mr. Pipitone refers to the credibility of

24  Mr. Gonzales's Declaration or his deposition testimony, he at

25  least knows at a minimum about the conditions that he worked in

1    and that being a tong and tripper operator position.  They were

2    all paid the same way, worked in eight different states, as

3    they represent, and they weren't paid any differently.  At a

4    minimum, your Honor.

5         But I also think that by working side-by-side with

6    these individuals on site at different jobs, knowing in general

7    what they do.  I mean he knows what a coil tubing operator

8    does.

9         **THE COURT:**  Right, but like who are we talking about?

10   And I don't how they're classified.  Obviously (indiscernible)

11   we don't have operators, but, you know --

12        **MR. ALEXANDER:**  Sure.

13        **THE COURT:**  -- who are these people I guess is

14   what --

15        **MR. ALEXANDER:**  Well, in looking back at Pipe Pros,

16   the Declarations they provided from the current employees,

17   those different job titles, stabbers, tong operators, tripper

18   operators, torque turn operators, field supervisors, tool

19   hands, floor hands, all these same people that were certified

20   in the *Allis-Chalmers* case is the almost identical setup of

21   Pipe Pros.  It's the same type of company, if not identical, on

22   a smaller scale.  But same operations, same exemption

23   classification, or in our view misclassification.

24        And so that's what these folks do.  There's coil

25   tubing operators, again there's floor hands, stabbers, tong and

tripper operators, torque turn assistants, torque turn

operators, there's a myriad of different job titles, if you

will, your Honor, but a lot of these people are doing very

similar job duties in the sense that they're all working

towards a common goal to get a well completed in the ground and

producing for an operator.  That's Pipe Pros' business.

They're a service company.  They help service the well to get

the operator online.  Not only setting up, but drilling and

production of the well.  They may have different job positions

and job titles that perform those duties, but they're all paid

the same way.  At least what we're asking for in this initial

certification is the salary plus the hourly job bonuses that

did not receive overtime.

        To borrow a phrase from the Defendants, I feel like

what we're doing here is that the Defendants are trying to jump

the shark.  We're going into a merits-based discussion of

exemptions and individual analyses that are -- they may well

exist in the future, your Honor, after discovery is largely

complete --

        **THE COURT:**  I agree to a large extent that's not

appropriate for now.  Because I've had other FLSA cases, in

fact one where you were involved where summary judgment issues

were addressed regarding some exemptions and we let a portion

of the class members, I dismissed them based on some

exemptions.  But I agree, that's not for me to start going

1 through right now.

2       **MR. ALEXANDER:**  Sure.  Your Honor, I'd like to point

3 the Court's attention, since it's a very recent ruling from

4 your Honor, if you look at the *Sherwin Alumina* case, those

5 individuals, a potential class size of I think four to five

6 hundred people, and very different job titles doing different

7 things for different contractors and for different companies

8 within the Sherwin plant over in Gregory, but what we argued

9 and what your Honor considered and ordered was that, look,

10 these people were all paid the same way, the pay frame was the

11 same way.  They weren't receiving -- or at least the

12 allegations were they were not receiving a certain pay and the

13 allegation was that that was -- that should have been included

14 in the pay rate, because these folks even received overtime but

15 what we were saying there was that, you know, hey, you didn't

16 do the regular rate for everybody.  And there were probably 15

17 different positions there that did arguably different tasks,

18 but the end goal, you know, they're working towards the same

19 product that Sherwin Alumina produces.

20       And I think that's what we have here, your Honor,

21 with Pipe Pros.  These guys may be doing different job tasks

22 and different assignments and sometimes --

23       **THE COURT:**  And I think both of you all were involved

24 in one, we dealt with something similar to this where depending

25 on the company man or what job site they were on, et cetera,

they might be treated differently, but the Court said I think

for purposes of this first stage I allowed it to go forward.

But I'm still -- and I'm going to go back to this,

I'm not seeing the evidence about others wanting to join before

the Court, which I think is fatal at this point.  Because we

can keep arguing about the others, but if we don't have that

third question, or however you want to phrase it -- and it is

really light and minimal, but I'm just not -- I know that

Plaintiff stated that he knew some people in the Declaration,

but he specifically says in his deposition that he doesn't know

of anyone else.  And there might be someone later, you know, I

don't know, may change the situation.  I just don't see it now

before the Court.

**MR. ALEXANDER:**  And I think that is one of the

difficulties, you know, certainly when you have a single

plaintiff case, your Honor, especially with somebody that

hasn't worked there for a long time.  Whether there are -- you

know, I think he reached out to -- and I disagree with the

classification of him contacting 20 people.  That was the

objection I wanted to lodge earlier.  I think that misstates

Mr. Gonzales's testimony.  There was -- the evidence provided

in the deposition in the response is that he texted a handful

of people.

And beyond that, you know, you're right, there may be

other people out there that, honestly, they don't know about

1    this lawsuit and certainly would like to join it.  And I think

2    that's the purpose of sending out a notice saying --

3            **THE COURT:**  It is, but as light and minimal as the

4    burden is, you do have to meet certain things and I don't see

5    where there is evidence of others wanting to join.

6            Now, all these other arguments, you know, that the

7    Defense is making, I agree in terms of trying to condense the

8    class, you know, I'll just -- if there was evidence of others

9    wanting to join, I'd be sitting here hashing out what kind of

10   class we're going to have because I think they've met their

11   light burden.  I'm not going to apply a more stringent burden

12   here or standard here.  But without that, something showing

13   someone else is interested in joining this, I don't think you

14   get there.

15           **MR. ALEXANDER:**  And, your Honor, just to clarify, is

16   that for the class-wide or is that for just --

17           **THE COURT:**  Anybody.

18           **MR. ALEXANDER:**  -- anybody?

19           **THE COURT:**  I didn't see evidence of anyone wanting

20   to join the suit.  And, you know, there are a couple of cases

21   out there, several of the Judges in the Southern District hold,

22   you know, it's pretty minimal, one person or whatever it is,

23   but you have to have something.  I know there is a couple of

24   cases maybe outside the District, or maybe within, that say

25   that's kind of putting the cart before the horse.  But I in the

1  past stated you need to show something, because I do think

2  Judge Rosenthal set it out correctly here, based on what we

3  rely on these cases, and I have followed that before, requiring

4  something, and I don't see it.  So --

5        **MR. ALEXANDER:**  Your Honor, would there be -- and

6  just to kind of piggyback on one of your Honor's comments about

7  if there were another person, as we talked about earlier, we've

8  been in contact with other individuals who have expressed an

9  interest in joining and we're in the process of getting a

10  consent form from them we can file with the Court.  Would there

11  be --

12        **THE COURT:**  Well, I mean like I would deny it without

13  prejudice, because I don't want to be in a position later where

14  I have ten separate lawsuits that really should have been

15  together.

16        **MR. ALEXANDER:**  Sure.

17        **THE COURT:**  So I mean it's something I would

18  reconsider later if it's appropriate.  But I just don't see it

19  right now.

20        Mr. Pipitone, do you want to make any comments?

21        **MR. PIPITONE:**  Your Honor, I would.  On that last

22  thing that Mr. Alexander said, that concerns me greatly,

23  because he stood here a little while ago and accused -- I don't

24  know if accused is the right word, suggested perhaps, that

25  something untoward had happened by us talking to our own

1  employees, yet he just mentioned that he has been in contact

2  with some former employees who haven't approached him.  So I

3  worry about contact with former employees or even current

4  employees and I would like --

5          THE COURT:  But Plaintiff is free to do that.  Just

6  as, you know, you all can talk to your employees before the

7  Court issues any sort of order.

8          MR. PIPITONE:  Okay.

9          THE COURT:  I mean I don't think there's anything

10  prohibiting a plaintiff from reaching out to coworkers.

11          MR. PIPITONE:  Okay.

12          THE COURT:  I mean I think there's case law on that.

13          MR. PIPITONE:  And, your Honor, I don't mind if it's

14  Mr. Gonzales that does that and I certainly, I don't have a

15  quarrel with it.

16          THE COURT:  Did you want to say something?

17          MR. ALEXANDER:  Yes, your Honor, I would just like to

18  point out that these  individuals have contacted my office and

19  I have not contacted anyone.

20          MR. PIPITONE:  One other thing too, your Honor, and

21  not to belabor this point, but in our brief, Mr. Alexander made

22  the comment that Mr. Gonzales worked alongside people and

23  therefore knew what their job functions were to argue for the

24  broader class, in our brief on Pages 11, 12, and 13 we've put

25  in excerpts of the Plaintiff's deposition testimony where he

1    said, "I don't have any idea who would be in this class beyond

2    tong and tripper operators."  And it's in the Plaintiff's own

3    deposition testimony, so --

4           **THE COURT:**  Well, that would kind of get if we get to

5    the next phase --

6           **MR. PIPITONE:**  Right.

7           **THE COURT:**  -- as to the class.  What he knows, who

8    might be similar to him, I mean that's what the Court has to

9    look at to see if he would be the appropriate representative or

10   if he just proceeds individually.

11          So at this point the Court's denying the Motion to

12   Certify the Class based on the evidence before the Court.

13          Anything further from the Plaintiff?

14          **MR. ALEXANDER:**  No, your Honor.  Just the fact if we

15   do have additional individuals that sign up that we can come

16   back.

17          **THE COURT:**  You can always re-urge your motion, ask

18   the Court to reconsider it.  I mean it all goes to the

19   efficiency of the process, so you can certainly file something

20   else.

21          **MR. ALEXANDER:**  Thank you, your Honor.

22          **THE COURT:**  Anything else from the Defense?

23          **MR. PIPITONE:**  Yes, your Honor.  Then in that case,

24   can we go ahead and set up some sort of a schedule for

25   discovery and so forth and so on?

1          **THE COURT:**  We can enter a Scheduling Order.

2          Brandy, do you want to….

3      **(Clerk confers with Court)**

4          **THE COURT:**  What are we looking at in terms of a

5 trial date?  What month?

6          **MR. PIPITONE:**  Somewhere in the Spring would be fine

7 or even, you know, later this Fall would be fine.

8          **MR. ALEXANDER:**  If you would, your Honor, I'd like to

9 have some time to look at my calendar and go over --

10         **THE COURT:**  Okay, just because we give you a trial

11 date and then we give you to Judge Martin, so we are usually

12 setting them out about ten months, right, from -- so what are

13 we looking at?

14         **MR. ALEXANDER:**  June to start.

15         **MR. PIPITONE:**  If your Honor gives us a trial date,

16 then Mr. Alexander and I can confer about the dates and get

17 those together --

18         **THE COURT:**  We'll give you a Scheduling Order.  If

19 you have issues with the deadlines, you can get with Brandy.

20 But we -- everything is triggered from the trial date.

21         So what do you have, Brandy?

22         **THE CLERK:**  Your Honor, in June of 2016 the trial

23 date would be June 13th, 2016.  The first set of deadlines

24 would be on December 1st (indiscernible)

25         **THE COURT:**  Okay.  Do you want to give them a copy.

1          **MR. PIPITONE:**  Thank you very much, Judge.

2          **THE COURT:**  You're welcome.

3          **MR. ALEXANDER:**  Thank you, your Honor.

4          **THE COURT:**  Yes.

5      **(Clerk confers with counsel)**

6          **MR. PIPITONE:**  Your Honor, these are no problem for

7  me whatsoever.  I totally agree with them.

8          **THE COURT:**  Okay.  How's that for you?

9          **MR. ALEXANDER:**  At first glance it looks fine,

10  your Honor.

11          **THE COURT:**  All right.  I'm going to go ahead and

12  enter that Scheduling Order and you can be excused.

13          **MR. PIPITONE:**  Thank you, Judge.

14          **MR. ALEXANDER:**  Thank you.

15      **(This proceeding was adjourned at 10:49 a.m.)**

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATION</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____         <u>October 5, 2015</u>

       Signed                               Dated

*TONI HUDSON, TRANSCRIBER*